```
                                              USDC SDNY
                                              DOCUMENT
UNITED STATES DISTRICT COURT                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                 DOC #: _____
----------------------------------------X    DATE FILED: JUL 0 7 2014
                                        :
XHEVAHIRE GJECI,                        :
                                        :
                          Plaintiff,    :          13-cv-6539 (KBF)
                                        :
        -v-                             :          MEMORANDUM
                                        :          DECISION & ORDER
COMMISSIONER OF SOCIAL SECURITY,        :
                                        :
                          Defendant.    :
                                        :
----------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Plaintiff pro se Xhevahire Gjeci seeks reversal of the decision by defendant Commissioner of Social Security (the "Commissioner") finding that she was not disabled and not entitled to supplemental security income under Title XVI of the Social Security Act. (Tr. 12–20.)

On September 8, 2010, plaintiff filed an application for supplemental security income. (Tr. 12, 131–40, 158.) On March 16, 2011, the Commissioner denied plaintiff's application on initial review. (Tr. 73–80.) Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 81–83.) On March 8, 2012, plaintiff appeared and testified, with her attorney present, at a hearing before ALJ Barry L. Williams. (Tr. 24–68.) On April 9, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act. (Tr. 12–20.) This decision became the final decision of the Commissioner on July 8, 2013, when the Appeals Council denied plaintiff's request for review. (Tr. 2–7.)

On September 16, 2013, plaintiff filed a complaint seeking judicial review of the ALJ's decision. (ECF No. 2.) On March 14, 2014, defendant filed a motion for judgment on the pleadings. (ECF No. 17.) Plaintiff did not oppose defendant's motion.

For the reasons set forth below, defendant's motion is DENIED and this action is remanded to the Commissioner for further proceedings.

I.    BACKGROUND

The Court recites here only those facts relevant to its review.[1] This Court reviews the ALJ's decision to determine whether there is substantial evidence to support his determination that plaintiff was not disabled between September 8, 2010, when she applied for supplemental security income, and April 9, 2012, the date of the ALJ's decision. See 20 C.F.R. §§ 416.330, 416.335.

Plaintiff, who was 41 at the time of her application, is an Albanian-born permanent resident with an eighth-grade education and no prior work experience. (Tr. 40, 44, 131, 141, 156–57, 162–64, 314.) Plaintiff speaks Albanian, but not fluent English. (Tr. 40, 162, 314.) Plaintiff has alleged physical disabilities due to, inter alia, disorders of the spine, vertigo, myocardial infarction, kidney stones, anal fissure, sinusitis, cholesterolemia, constipation, pharyngitis, helicobacter pyiori infection, thyroid nodules, recurring headaches, and arthalgias. (See Tr. 14.) Plaintiff has alleged mental disabilities due to, inter alia, depression, anxiety, bipolar disorder, insomnia, anxiety, low energy, and poor concentration. (See Tr. 14, 163.) In a function report completed on January 3, 2011, plaintiff reported

_____

[1] A thorough summary of plaintiff's medical history is set forth in the administrative record.

2

various issues stemming from her alleged disability, including an inability to perform household chores, an inability to handle money, requiring assistance to maintain personal care and hygiene, a lack of concentration, and an inability to follow instructions. (Tr. 172–80.) Plaintiff also reported an ability to occasionally prepare simple meals; to walk in public, use a car, and travel on public transportation with assistance; and to leave the house occasionally to attend healthcare appointments and grocery shop. (Id.)

The record contains reports from several physicians detailing the nature of plaintiff's physical health. On October 7, 2010 and January 6, 2011, plaintiff saw her primary care physician Dr. Alan Diaz and reported back pain, shoulder pain, clavicular pain, constipation, and "pain EVERYWHERE." (Tr. 254, 260.) On February 1, 2011, plaintiff presented to Dr. Diaz sad, mildly ill, uncomfortable, and overweight. (Tr. 262.) Dr. Diaz recommended and plaintiff underwent MRIs and X-rays of plaintiff's spine, ribs, and hip, but Dr. Diaz did not recommend or order surgery. (Tr. 262, 264–68.)

Plaintiff saw osteopath Dr. Joshua Lehman for physical therapy from September 2010 through March 2011. (Tr. 281–82, 284–85, 287–88, 290–92, 349–50, 353, 364–65.) During those visits, plaintiff reported, inter alia, continued pain in her neck, back, and left knee. (Id.) Dr. Lehman repeatedly performed a series of musculoskeletal tests, often showing negative results, although occasionally with positive results. (Tr. 281, 284, 287, 291, 313, 349, 353, 364.) Plaintiff stated that medication and massages prescribed by Dr. Lehman helped alleviate her pain. (Tr.

3

290.) During her final visit to Dr. Lehman, on March 30, 2011, plaintiff informed Dr. Lehman that she intended to discontinue physical therapy because her home was too far from Dr. Lehman's office. (Tr. 349.) Dr. Lehman recommended that plaintiff continue using pain medication as needed and follow up with Dr. Diaz. (Id.)

Plaintiff visited Wilson Orthopaedics once in October 2010 and twice in January 2011. (Tr. 431–32.) In October, doctors suspected plaintiff had fibromyalgia, but plaintiff was unable to follow up with a rheumatologist. (Tr. 432.) On January 11, 2012, Dr. Donald E. Heitman conducted a series of musculoskeletal tests, prescribed medication and physical therapy for plaintiff, and recommended that plaintiff see a pain specialist, Dr. Sonali Lal. (Id.) On January 17, 2012, Dr. Lal found that plaintiff had full strength in her bilateral and upper extremities, that she was alert and oriented, and that her jump response was positive. (Tr. 431.) Dr. Lal prescribed more pain medication and recommended that plaintiff return to Wilson with an interpreter in four weeks. (Id.)

On February 4, 2011, plaintiff saw Dr. William Lathan for a consultative physical examination. (Tr. 310–13.) Plaintiff reported that medication and physical therapy were ineffective, but that wearing a soft corset brace was helpful. (Tr. 310.) Dr. Lathan noted that plaintiff needed no help mounting and dismounting the examination table. (Tr. 311.) Plaintiff had a full range motion in her shoulders, arms, hips, and knees, and her prognosis was stable. (Tr. 312.) Dr. Lathan did,

4

however, note "a severe restriction for bending, lifting, pushing, pulling, squatting, standing, walking, and strenuous exertion." (Tr. 313.)

On February 17, 2012, plaintiff saw Dr. Arnold Wilson, who completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form. (Tr. 344–47.) Based on the extent of plaintiff's impairment, Dr. Wilson stated that plaintiff should lift not more than 5 pounds, should not walk farther than one or two blocks at time, and should alternate periodically between standing and sitting. (Tr. 344–45.) The doctor also noted that plaintiff had limited pushing and pulling capabilities and could not perform postural activities. (Tr. 345.) Finally, Dr. Wilson stated that it was "medically reasonable to expect that [plaintiff's] ability to maintain attention and concentration on work tasks throughout an 8 hour day is significantly compromised by pain, prescribed medication or both[.]" (Tr. 346.)

The record contains reports from several psychiatrists detailing the nature of plaintiff's mental health. Plaintiff saw her treating psychiatrist, Dr. Michael Hargrove, on November 10 and December 7, 2009; January 11, February 8, March 8, April 5, May 3, June 1, August 10, September 7, October 4, November 15, and December 13 of 2010; January 3, January 31, March 1, March 29, April 26, May 24, June 21, August 1, August 29, September 26, November 14, and December 13 of 2011; and January 10, 2012. (Tr. 440–54.) Plaintiff never reported hallucinations, suicidal or homicidal ideations, or delusions. (See id.) Dr. Hargrove reported that plaintiff felt physical pain, sad, depressed, or "so-so" during the September 7,

5

October 4, November 15, December 13, 2010, January 31, March 29, April 26,

August 1, August 29, September 26, November 14 and February 7 visits. (Id.) Dr.

Hargrove reported plaintiff felt "pretty good," "a little bit good," or "okay" during the

March 1, May 24, December 13, and January 10 visits. (Tr. 443–45, 451–52.)

During the relevant period, Dr. Hargrove treated plaintiff with Valium, Risperdal,

Trazodone, Seroquel, and Wellbutrin XL. (Tr. 447–48.) Although she experienced

some sleeping difficulty, plaintiff stated that the medication helped her sleep. (Tr.

443.)

On January 31, 2011,[2] Dr. Hargrove diagnosed plaintiff with major

depressive disorder, severe with psychotic features, rendering her "medically

(mentally) disabled." (Tr. 464–65.) According to Dr. Hargrove, "Major Depressive

Disorder is a mental illness that causes poor concentration, forgetfulness, thoughts

of dying, insomnia, and may cause auditory hallucinations." (Tr. 464.) Dr.

Hargrove noted:

> [Plaintiff] is unable to concentrate and retain new information.  She
> cannot focus when reading.  Her immediate retention and recall are
> impaired due to the severity of depression.  Her impairments of
> concentration and immediate retention and recall affect her ability to
> demonstrate knowledge and understanding of English and/or civics.
> She has difficulty learning and retaining new information.

(Tr. 466.) Finally, Dr. Hargrove noted that plaintiff's mental condition impaired her

ability to read, write, and speak English. (Id.)

---

[2] The interpreter's certification suggests that the medical examination that formed the basis of this diagnosis occurred on May 22, 2007. (Tr. 468.) However, it appears that this date may be an error. Dr. Hargrove dated the form January 31, 2011, and stated in his notes that he "[f]illed out Form N-648, Medical Certification for Disability Exception for [plaintiff]" on January 31, 2011. (Tr. 443.) In the interest of liberally construing plaintiff's pro se complaint, the Court treats the diagnosis as having been made on January 31, 2011.

On February 4, 2011, Dr. Arlene Broska performed a consultative

psychological examination of the plaintiff. (Tr. 314–17.) Plaintiff told Dr. Broska

"that she feels better on her medications." (Tr. 314.) Dr. Broska noted that

plaintiff's speech was fluent and that plaintiff's "[e]xpressive and receptive language

abilities were adequate." (Tr. 315.) However, plaintiff told Dr. Broska that she had

an imaginary friend whom she saw, hear, and spoke with every day. (Tr. 314.) Dr.

Broska noted that plaintiff's concentration was so impaired that plaintiff could not

count from one to ten and could not perform simple math calculations. (Tr. 315.)

Further, Dr. Broska noted plaintiff's recent and remote memory skills, judgment,

and insight were all impaired. (Id.) Dr. Broska discussed plaintiff's ability to work:

> Vocationally, it appears the claimant can follow and understand simple
> directions and instructions. She requires assistance with simple and
> complex tasks. She may have difficulty maintaining attention and
> concentration and when learning new tasks. She may have difficulty
> maintaining a regular schedule. She does not make appropriate
> decisions. She may not relate adequately with others or appropriately
> deal with stress.

(Id.) Dr. Broska ultimately concluded, "The results of the examination appear to be

consistent with psychiatric problems and this may significantly interfere with

[plaintiff]'s ability to function on a daily basis." (Id.)

On March 5, 2011, Dr. T. Inman-Dundon completed a Psychiatric Review

Technique form based solely on a compilation of plaintiff's medical records. (Tr.

318–31.) Dr. Inman-Dundon determined that plaintiff did not meet the necessary

criteria to be found disabled under the relevant regulations, although Dr. Inman-

Dundon did determine that plaintiff had moderate restrictions in daily living

7

activities and maintaining concentration. (Tr. 328–29.) Overall, Dr. Inman-Dundon determined that plaintiff "appears to be capable of at least simple work on a sustained basis." (Tr. 340.)

## II.    APPLICABLE LEGAL PRINCIPLES

### A.  Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Therefore, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted).

Even where a motion stands unopposed, the Court does not embrace default judgment principles.  "Although the failure to respond may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." Vt. Teddy Bear Co. v. 1800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004) (citations and internal quotation marks omitted); see also Martell v. Astrue, No. 09 Civ. 1701 (NRB), 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) (applying the same standard in a pro se unopposed SSI appeal).

8

The Court "liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (citation and internal quotation marks omitted).

### B. The Disability Standard

The Commissioner will find a claimant disabled under the Act if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. Part 404,

9

Subpart P, App. 1 ["Appendix 1"]. Assuming the claimant does not
have a listed impairment, the fourth inquiry is whether, despite the
claimant's severe impairment, she has the residual functional capacity
["RFC"] to perform her past work. Finally, if the claimant is unable to
perform her past work, the burden then shifts to the Commissioner to
determine whether there is other work which the claimant could
perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

C. Review of the ALJ's Judgment

The Commissioner and ALJ's decisions are subject to limited judicial review.
The Court may only consider whether the ALJ has applied the correct legal
standard and whether his findings of fact are supported by substantial evidence.
When these two conditions are met, the Commissioner's decision is final. 42 U.S.C.
§ 405(g); Burgess v. Astrue, 537 F.3d 117, 127–28 (2d Cir. 2008); Veino v. Barnhart,
312 F.3d 578, 586 (2d Cir. 2002); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999);
Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).

If the Commissioner and ALJ's findings as to any fact are supported by
substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); Diaz v.
Shalala, 59 F.3d 307, 312 (2d Cir. 1995). Substantial evidence means "'more than a
mere scintilla. It means such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.
1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Court must
consider the record as a whole in making this determination, but it is not for this
Court to decide de novo whether the plaintiff is disabled. See Veino, 312 F.3d at

10

586; Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997).

"[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician," although an ALJ need not afford controlling weight to a treating physician opinion where "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; [and] (iv) whether the opinion is from a specialist." Id. (citing 20 C.F.R. § 404.1527(d)(2)).

III.    DISCUSSION

Regarding plaintiff's physical impairments, the ALJ correctly conducted the five-step analysis required by 20 C.F.R. §§ 404.1520 and 416.920.

The ALJ concluded that plaintiff "has the residual functional capacity to perform light work," and that she "can only occasionally climb ramps or stairs, stoop, kneel, crouch or crawl," but "never climb ladders[,] ropes or scaffolds." (Tr. 15.) In coming to this conclusion, the ALJ relied on "the treating orthopedist," Dr. Lehman. (Tr. 16–18.) The ALJ also relied upon various findings and conclusions of the various doctors at Wilson Orthopaedics. (See id.) Although plaintiff's doctors

11

suggested that plaintiff had some physical pain, the Court agrees that the record contains substantial evidence that plaintiff could perform light work. Dr. Diaz, plaintiff's treating physician, noted that plaintiff was ill, overweight, and uncomfortable, but not that plaintiff was unable to climb ramps and stairs, kneel, or crouch. Dr. Lehman had more serious concerns about plaintiff's physical condition than Dr. Diaz, but suggested that plaintiff's physical pain was manageable with the right medication. The Wilson doctors came to essentially the same conclusion as Dr. Lehman. Finally, Dr. Wilson noted that plaintiff had some severe physical restrictions, but none so pervasive as to prevent plaintiff from completing light work. Because the ALJ supported his conclusions regarding plaintiff's physical disabilities with "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Pratts, 94 F.3d at 37, the Court must uphold that determination. See 42 U.S.C. § 405(g); Diaz, 59 F.3d at 312.

However, regarding the plaintiff's mental impairments, the ALJ incorrectly dismissed the opinion of plaintiff's treating psychiatrist, Dr. Hargrove, and therefore incorrectly conducted the five-step analysis required by 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv).

The treating physician rule generally requires that the ALJ afford deference or controlling weight to a treating physician's opinion unless "other substantial evidence in the record, such as the opinions of other medical experts," contradicts with it. Halloran, 362 F.3d at 32. Here, in finding that the claimant could perform light work notwithstanding her mental conditions, the ALJ stated—in accordance

12

with the rule—that he gave "the treating . . . psychiatrist's observations regarding the moderate nature of the claimant's impairments[] great weight since they are supported by a record showing that the claimant can perform at least light work." (Tr. 17.)

However, the ALJ appears to have misinterpreted or misstated Dr. Hargrove's opinion, which conflicts with rather than supports the ALJ's determination. For example, Dr. Hargrove determined that plaintiff was "unable to concentrate and retain new information," and that her "immediate retention and recall are impaired due to the severity of depression" (Tr. 466)—contrary to the ALJ's conclusion that plaintiff is able to learn and "perform simple routine repetitive tasks." (Tr. 15.) Similarly, Dr. Hargrove found that plaintiff could not speak English and that her mental disability was so severe that she was incapable of learning English sufficient to engage in those interactions—contrary to the ALJ's determination that plaintiff could "occasionally interact with the public." (Tr. 15.) Finally, Dr. Hargrove concluded that plaintiff was "medically (mentally) disabled." (Tr. 465.) This conclusion is at odds with the ALJ's ultimate determination that plaintiff could perform light work.

The Court is mindful that the ALJ is entitled to dismiss a treating physician's opinion where "other substantial evidence in the record, such as the opinions of other medical experts," contradicts with it. Halloran, 362 F.3d at 32. However, the ALJ here did not state his disagreement with Dr. Hargrove's opinion. Assuming arguendo that the ALJ were rejecting that opinion, the record does not

contain any medical opinions or other substantial evidence in the record to support that rejection. For example, Dr. Inman-Dundon's report, which found that plaintiff was "capable of at least simple work on a sustained basis" (Tr. 340), is insufficient substantial evidence to reject Dr. Hargrove's opinion. Dr. Inman-Dundon did not examine plaintiff in person, unlike Dr. Hargrove, but rather recited facts found in Dr. Hargrove's and Dr. Broska's notes and then came to a contrary conclusion. (See id.; Mem. of L. in Supp. of Commissioner's Mot. 5, ECF No. 18.) Under the factors set forth in 20 C.F.R. § 404.1527(d)(2), any reliance on Dr. Inman-Dundon's report rather than Dr. Hargrove's would be improper. See Halloran, 362 F.3d at 32.[3]

The ALJ also discounted Dr. Broska's opinion, which stated that plaintiff's "psychiatric problems . . . may significantly interfere with [plaintiff]'s ability to function on a daily basis" (Tr. 315), because she based her opinion in part on plaintiff's subjective reporting of psychiatric symptoms. (See Tr. 18.) The ALJ is, of course, entitled to make credibility determinations regarding plaintiff's subjective complaints, particularly during the administrative hearing. See, e.g., Schaal, 134 F.3d at 502. However, the ALJ may not reject a doctor's medical opinion simply because the opinion partially relied on subjective reporting. See Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) ("The fact that [a doctor] also relied on [a claimant's] subjective complaints hardly undermines his opinion as to her

---

[3] The ALJ did explicitly reject one part of Dr. Hargrove's opinion: his conclusion that plaintiff could not speak English. (See Tr. 15–18.) The ALJ noted that Dr. Hargrove "did not present any objective evidence or even intellectual testing" in support of his finding. (Tr. 18.) However, that alone cannot serve as a basis for rejecting Dr. Hargrove's opinion, because, as "a general matter, 'objective' findings are not required in order to find that an applicant is disabled." Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003).

14

functional limitations, as [a] patient's report of complaints, or history, is an essential diagnostic tool.") (alteration in original) (internal quotation marks omitted).

While the ALJ's opinion is not entirely clear on this point, the ALJ also appears to have relied in part on the vocational expert in determining plaintiff's credibility and in finding plaintiff's RFC. (See Tr. 17.) Such reliance was improper. A vocational expert's function is to determine whether jobs exist in the national economy based on an RFC as determined by the ALJ. (See Tr. 57–58.) Thus, an ALJ may not rely on a vocational expert to determine a claimant's RFC. See Townley v. Heckler, 748 F.2d 109, 113 (2d Cir. 1984); 20 C.F.R. § 404.1546 ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").

Thus, the ALJ rejected Dr. Hargrove's determination that plaintiff was "medically (mentally) disabled" due to major depressive disorder, severe with psychotic features (Tr. 464–65), despite the lack of "substantial evidence in the record, such as the opinions of other medical experts," to support his doing so. Halloran, 362 F.3d at 32. "In the absence of a medical opinion to support the ALJ's finding" as to a plaintiff's RFC, "it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Balsamo, 142 F.3d at 81 (internal quotation marks omitted).

In light of the ALJ's errors, the Court remands this action to the Commissioner so that the ALJ may fully develop the factual record—including

15

seeking further information from the doctors justifying their opinions—and reweigh all medical opinions in the record appropriately. If the ALJ rejects Dr. Hargrove's medical opinion on remand and after fully developing the record, he shall rely on substantial evidence to do so. See, e.g., Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000) ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record . . . ."); Rosa, 168 F.3d at 79 ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); Schaal, 134 F.3d at 505 ("The lack of clinical findings complained of by the ALJ did not justify the failure to assign at least some weight to [the doctor's] opinion[;] even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the doctor] sua sponte.").[4]

---

[4] Because the ALJ erred in failing to accord Dr. Hargrove's opinion appropriate weight, the Court does not reach the question of whether the ALJ properly rejected plaintiff's credibility. (See Tr. 17.) The Commissioner shall reconsider the question of plaintiff's credibility on remand. See Rosa, 168 F.3d at 82 n.7 ("Because we have concluded that the ALJ was incorrect in her assessment of the medical evidence, we cannot accept her conclusion regarding [plaintiff's] credibility.").

IV.   CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the

pleadings is DENIED.  The Clerk of Court is directed to close the motion at ECF

No. 17, to terminate this action, and to remand this action to the Social Security

Administration for further proceedings.[5]

Dated:        New York, New York
              July ⁊, 2014

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge

CC:
Xhevahire Gjeci
171 East 205th Street
Apt. 4A
Bronx, NY 10458

---

[5] The Court has the power to remand this action to the Social Security Administration sua sponte notwithstanding the fact that plaintiff did not file her own motion for judgment on the pleadings. See, e.g., Carnevale v. Gardner, 393 F.2d 889, 891 n.1 (2d Cir. 1968); Clark v. Callahan, No. 96-cv-3020 (SAS), 1998 WL 512956, at*1 (S.D.N.Y. Aug. 17, 1998) ("Although 'a remand request is normally made by a party, there is no reason why a court may not order the remand sua sponte.'" (quoting Igonia v. Califano, 568 F. 2d 1383, 1387 (D.C. Cir. 1977))).